**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 12 CR 782** |
| **v.** | ) | |
| | ) | **Judge Virginia M. Kendall** |
| **ROBERT KOLBUSZ,** | ) | |
| | ) | **Magistrate Judge Jeffrey I. Cummings** |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

On October 20, 2014, a jury convicted defendant Robert Kolbusz of six counts of fraud (by mail and wire) in violation of 18 U.S.C. §§1341 and 1343. On September 10, 2015, District Court Judge John Z. Lee entered a judgment sentencing defendant to an 84-month term of imprisonment and ordering restitution in the amount of $3,764,381.69. (Dckt. #313 at 4, 8). Subsequently, the Government initiated citation proceedings to discover defendant's assets. Currently before the Court are the Government's motions for turnover, (Dckt. #353, #355 & #370), to which *pro se* defendant has responded raising almost identical objections to each motion, and requesting that the Court quash the citations, (Dckt. #375, #376 & #381, respectively). At the Court's direction, the Government filed a consolidated reply, (Dckt. #388), to address each of defendant's objections.

For the reasons set forth below, the Government's motion for turnover as to Bank of America, (Dckt. #353), is granted. The motions for turnover as to Fidelity & Guaranty Life Insurance Company, (Dckt. #355), and Fidelity Management Trust Company, (Dckt. #370) are granted in part as modified by the Court below. Defendant's motions to quash the citations, (Dckt. #375, #376 & #381), are denied.

## I.     RELEVANT BACKGROUND

### A.     Judgment Order

Again, on September 10, 2015, Judge Lee entered a judgment sentencing defendant to an 84-month term of imprisonment plus restitution in the amount of $3,764,381.69 that is to be disbursed to the patients, private insurers, and the governmental entity who were victimized by defendant's unlawful conduct.  (Dckt. #313 at 4, 8-12).  The judgment order directed defendant to surrender to the federal correctional institution in Bastrop, Texas on November 6, 2015, and further directed him to notify the U.S. Attorney "within 30 days of any change of name, residence, or mailing address, until all fines, restitution, costs, and special assessments . . . are fully paid."  (*Id*. at 1, 4).  The schedule of payments provided for a lump sum payment of $600 due immediately and a lump sum payment of $250,000 due within 60 days.  (*Id*. at 2).[1]  The judgment order included a special instruction reflecting that the defendant's monthly payment schedule shall be an amount that is at least 10% of defendant's net monthly income.  (*Id*.)

The Seventh Circuit affirmed defendant's conviction on September 21, 2016.  *See United States v. Kolbusz*, 837 F.3d 811 (7th Cir. 2016).

### B.     Government Issues Citations to Discover Assets

#### 1.     Bank of America

On November 9, 2015 – three days after defendant surrendered to the correctional facility in Bastrop, Texas to begin serving his sentence – the Government issued a citation to discover assets to third-party Bank of America, N.A. ("BOA").  (Dckt. #293 & #297).  The citation was served on BOA on November 10, 2015, and the certificate of mailing reflects that a copy was

---

[1] Judge Lee entered an amended judgment on February 19, 2016, solely for a clerical mistake that is not relevant to the issues before the Court.  The remainder of the judgment stood.  (Dckt. #313).

2

mailed to defendant within three business days thereafter to his residence in Oak Brook, IL, where his wife continued to reside. (Dckt. #297). BOA answered the citation on November 30, 2015, (Dckt. #301 at 2-4), and provided an amended answer on September 20, 2021, (Dckt. #353 at 4-6).[2] The amended answer indicates that BOA is holding $3,575.44 in a checking account in defendant's name. (*Id*.)

### 2. Fidelity Management Trust Company

On November 9, 2015, the Government also issued a citation to discover assets to Fidelity Management Trust Company ("FMTC").[3] (Dckt. #294 & #298). The citation was served on FMTC on November 12, 2015, with a copy mailed to defendant – again to the Oak Brook residence – within three business days. (Dckt. #298 at 2). FMTC answered the citation on November 20, 2015, (Dckt. #302), and provided an amended answer on March 5, 2021, (Dckt. # 370 at 5-7). According to the amended answer, FMTC is holding $8,492 in an IRA account in defendant's name. (*Id*.)

### 3. Fidelity & Guaranty Life Insurance Company

On December 8, 2015, the Government issued a citation to third-party Fidelity & Guaranty Life Insurance Company ("F&G Life"). (Dckt. #304 & #306). The citation was served on F&G Life on December 9, 2015, and the certificate of mailing reflects that a copy was mailed to defendant within three business days thereafter, but this time to the correctional facility in Bastrop, Texas. (Dckt. #306 at 2). F&G Life answered the citation on January 15, 2016, and provided an amended answer on April 1, 2021, (Dckt. #355 at 5-7). The amended answer

---

[2] BOA's initial answer that was filed with the Court also inadvertently includes BOA's answer to a citation for an unrelated judgment debtor. (Dckt. #301 at 1).

[3] Although the citation was initially issued to Fidelity Service Company, Inc., the proper entity is FMTC.

indicates that F&G Life is holding $17,320.21 in a non-qualified annuity account in defendant's name.  (*Id*.).

    **C.**    **Government's Motions for Turnover**

In the instant motions, the Government seeks turnover orders for the approximately $29,000 being held by the three institutions for application towards defendant's restitution judgment.[4]  In support, the Government argues that all statutory notice requirements have been met and that none of the funds are exempt from garnishment.

In response, defendant does not dispute the restitution judgment against him or attempt to argue that the funds are exempt.  Instead, he raises a bevy of objections, mostly technical, including, *inter alia,* that: (1) he did not receive proper notice of the citations; (2) the citations have expired; and (3) the Government has not established that the funds at issue are traceable to the offense or are otherwise appropriate substitute assets.  The Court addresses each of defendant's arguments in turn below.[5]

**II.**    **STANDARD FOR COLLECTION PROCEEDINGS**

Upon entry of judgment, the order for payment of restitution becomes a lien in favor of the Government on all of a defendant's property and rights to property.  *United States v. Miller*, 39 F.4th 844, 846 (7th Cir. 2022) (citing the Mandatory Victims Restitution Act "MVRA"), 18 U.S.C. § 3613(c)).  "Liens to pay restitution debts are treated like tax liens . . . [and] are 'effective against every interest in property accorded a taxpayer by state law.'"  *Id*., *quoting United States v. Kollintzas*, 501 F.3d 796, 800 (7th Cir. 2007).

---

[4] According to the Government, as of June 21, 2022, defendant still owes approximately $3.45 million of the $3.7 million restitution judgment.  (Dckt. #370).

[5] Defendant raises largely identical arguments in each of his three responses.  Where an argument only relates to a specific citation, the Court has indicated as such.

4

Under the MVRA, the Government may enforce restitution awards "in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law." *United States v. Sayyed*, 186 F.Supp.3d 879, 881 (N.D.Ill. 2016), *aff'd*, 862 F.3d 615 (7th Cir. 2017); *see also United States v. Bronke*, No. 01-CR-532, 2022 WL 4119784, at *5 (N.D.Ill. Sept. 8, 2022) (noting that the Government can initiate collection proceedings under the Federal Debt Collection Procedures Act ("FDCPA") or "under state law, such as by serving a citation to discover assets."). Under either course, it is well-settled that "district courts may entertain civil garnishment and other collection proceedings as post judgment remedies within an underlying criminal case." *Kollintzas*, 501 F.3d at 800. The "MVRA rests on the recognition that it is essential that the criminal justice system recognize the impact that crime has on the victim, and, to the extent possible, ensure that the offender be held accountable to repay these costs." *United States v. Swenson*, 971 F.3d 977, 982 (9th Cir. 2020) (internal quotation and citation omitted).

## III. ANALYSIS

As explained above, the Government initiated collection proceedings in this criminal action by issuing citations to discover assets, which are governed here by 735 ILCS 5/2–1402 and Illinois Supreme Court Rule 277. *See* Fed.R.Civ.P. 69; *Kelley v. Stevanovich*, 40 F.4th 779, 782 (7th Cir. 2022) ("Rule 69 requires federal courts to adopt state procedure unless there is an applicable federal statute expressly regulating the execution of judgments.") (internal quotation and citation omitted). Because the bulk of defendant's arguments relate to the Government's purported failure to abide by the statutory notice and service requirements of 735 ILCS 5/2–1402 and Rule 277, the Court begins there.

### A.  Notice and service requirements under 735 ILCS 5/2–1402 and Rule 277

Pursuant to 735 ILCS 5/2–1402, a judgment debtor is "entitled to prosecute citations to discover assets for the purposes of examining the judgment debtor or any other person to discover assets or income of the debtor . . . and of compelling the application of non-exempt assets or income discovered toward the payment of the amount due under the judgment." 735 ILCS 5/2–1402(a). The citation proceeding is commenced by the service of a citation issued by the Clerk of Court in a form substantially similar to that set forth in the statute. 735 ILCS 5/2–1402(a), (b); Ill.S.Ct. Rule 277. The statute further provides, in relevant part, that:

> Whenever a citation is served upon a person or party other than the judgment debtor, the officer or person serving the citation shall send to the judgment debtor, within three business days of the service upon the cited party, a copy of the citation and the citation notice, which may be sent by regular first-class mail to the judgment debtor's last known address.

735 ILCS 5/2–1402(b). Further, "[n]o order or judgment shall be entered . . . in favor of the judgment creditor unless there appears of record a certification of mailing showing that a copy of the citation and a copy of the citation notice was mailed to the judgment debtor as required" by the statute. 735 ILCS 5/2–1402(d).

With these requirements in mind, the Court turns to each of defendant's purported misgivings regarding the Government's issuance and service of the citations.

### 1.  The citations were properly issued by the Clerk of Court.

At the outset, the Court dispenses with defendant's argument that the citations were not properly issued by the Clerk of Court because they did not contain the "embossed seal of court." (Dckt. #375 at 7). As defendant properly notes, section 5/2-1402 "does not define the term 'issue' and does not specify what constitutes an issuance." *Int'l Ins. Co. v. Caja Nacional de Ahorro Y Seguro*, No. 00 C 6703, 2001 WL 1516730, at *3 (N.D.Ill. Nov. 28, 2001). However,

6

"all writs and processes issued from United States courts 'shall be made under seal of the court and signed by the clerk thereof.'" *Id.*, *quoting* 28 U.S.C. §1691; *see also* Fed.R.Civ.P. 4(b) (requiring that a summons must be signed by the clerk and bear the court's seal).

But here, unlike in *Int's Ins. v. Caja Nacional* upon which defendant relies, there is no indication that the citations were merely just *filed* by the Government and not properly "issued" by the Clerk. 2001 WL 1516730, at *3 ("[R]equiring an indicia that the Clerk's Office did more than merely accept a filing; instead, demonstrating that the Clerk's Office reviewed, signed, and placed the Court's seal on the documents, is consistent with putting forth such document officially."). Instead, as the Government explains and the docket reflects, the original signed and dated citations containing the seal of the Court were issued by the Clerk, and then provided to the Government for mailing to the third parties. (Dckt. #293, #294 & #304). A copy of the citations showing proof of service, and which naturally do not reflect the Court's seal as did the originals, were then filed on the docket. (Dckt. #297, #298 & #306). Thus, contrary to defendant's assertion, the citations were properly issued by the Clerk of Court as required.

> **2.** **The Government mailed a copy of each citation and the citation notices within three business days of service of the citations on the third parties.**

Similarly, the Court quickly dispenses with the defendant's argument that the Government failed to send him copies and notice of the citations within three business days of service of the citations as required by 735 ILCS 5/2–1402(b).[6] Here, each citation filed with the

---

[6] Defendant also implies throughout his briefs that he was not provided copies of each of the original and amended citation *responses* to the proper location in a timely manner. (*See, e.g.*, Dckt. #375 at 8, 9; Dckt. #376 at 6). However, nothing in 735 ILCS 5/2–1402 or Rule 277 requires either the party issuing the citation or the citation respondent to provide the judgment debtor with a copy of the citation response, let alone provide such a copy within a certain time frame, and defendant cites no authority in support of his argument on this point.

Court contains a signed proof of service indicating that a copy of the citation and citation notice were sent by first class mail within three business days of service. (Dckt. #297 at 2, #298 at 2, & #306 at 2). At least with respect to the *timing* of the mailing, this ends the inquiry. *See In re Marino*, 201 B.R. 234, 247 (Bankr.N.D.Ill. 1996) (holding that the affidavit of service "established as an undisputed fact" that the citation and citation notice were mailed within three business days in compliance with the statute). The *location* to which the Government sent the citations, however, is a separate inquiry, which the Court turns to next.

3. **Notwithstanding the Government's failure to mail the BOA and FMTC citations to defendant at the correctional facility in Texas, defendant had actual notice of the citations.**

With respect to the BOA and FMTC citations, defendant argues that the Government did not properly serve him because they were mailed to his Oak Brook residence when the Government knew – or should have known – that he was incarcerated in Bastrop, Texas at the time.[7] In support, defendant cites to the judgment order itself directing him to report to the correctional facility in Bastrop, TX on November 6, 2015. He also points to a motion he filed on October 27, 2015, requesting permission to travel to Texas on November 3, 2015 to spend time with family before reporting to the prison. (Dckt. #290). Judge Lee granted that motion, which was unopposed by the Government, on November 2, 2015. (Dckt. #292). Based on this evidence, defendant argues that the Government knew he was in Texas on November 9, 2015 leaving the Government's subsequent service of the BOA and FMTC citations to his residence in Oak Brook invalid.

The Government responds that it mailed the citations to defendant's last known address, and that any error was a result of *defendant* failing to properly update his address as required

---

[7] Again, the F&G Life citation was mailed to defendant at the correctional facility in Bastrop, Texas.

under the judgment order. (Dckt. #313 at 1). Notwithstanding defendant's error, the Government argues that defendant had actual notice of the citations, and ample opportunity to respond. Although the Court ultimately agrees on the latter point, it disagrees that any error in service of these two citations falls on defendant for failing to update his address.

To begin, as stated above, 735 ILCS 5/2–1402(b) required the Government to serve defendant with the citations by regular first-class mail to his "last known address." This service requirement is "designed for the purposes or notice and due process." *In re Marino*, 201 B.R. at 247. Under the Due Process clauses of the Fifth and Fourteenth Amendments, "individuals whose property interests are at stake due to government actions are entitled to notice of the proceedings and an opportunity to be heard." *Dusenbery v. United States*, 534 U.S. 161, 167 (2002). However, "[d]ue process does not require that a property owner receive actual notice before the government may take his property." *Jones v. Flowers*, 547 U.S. 220, 226 (2006). Rather, "due process requires notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *VanHorn v. D.E.A.*, 677 F.Supp.2d 1299, 1310 (M.D.Fla. 2009) (internal quotation and citation omitted).

Here, on the clear record before the Court, the Government knew – or certainly should have known – that defendant was incarcerated at the time it issued the BOA and FMTC citations on November 9, 2015. Indeed, both the judgment order itself *and* defendant's subsequent motion seeking leave to travel to Texas *prior* to his November 6, 2015 prison reporting date plainly placed the Government on notice that he was no longer residing in Oak Brook as of November 9, 2015. Thus, under well-settled Supreme Court authority, the Government's mailing of the citations to his Oak Brook residence was not reasonably calculated to initially

provide defendant notice of the citations. *See Robinson v. Hanrahan*, 409 U.S. 38, 40 (1972)

(finding notice was not reasonably calculated where "the State knew that appellant was not at the

address to which the notice was mailed and, moreover, knew also that appellant could not get to

that address since he was at that very time confined in the Cook County jail."); *see also Williams*

*v. United States Drug Enforcement Administration*, 51 F.3d 732, 734 (7th Cir. 1995) (notice

mailed to the claimant's residential address was insufficient where the seizing agency was "well

aware of his incarceration"); *Lopez v. United States*, 201 F.3d 478, 480 (D.C.Cir. 2000) (finding

notice inadequate where "the agency took no additional steps to determine Mr. Lopez's

whereabouts despite its knowledge that Mr. Lopez was in the custody either of the State of

Florida or of the Attorney General of the United States"); *United States v. $184,505.01 in U.S.*

*Currency*, 72 F.3d 1160, 1163 (3d Cir. 1995) ("The government did not serve McGlory in prison,

and made no attempt to do so."); *People ex rel. Devine v. $30,700 U.S. Currency*, 766 N.E.2d

1084, 1094-96 (Ill. 2002).

   Moreover, and contrary to the Government's assertion, defendant's delay in updating his

address as required under the judgment order does not excuse the Government's failure to mail

the notices to him in prison. *See Jones v. Flowers*, 547 U.S. 220, 232 (2006) ("The

Commissioner does not argue that Jones' failure to comply with a statutory obligation to keep his

address updated forfeits his right to constitutionally sufficient notice, and we agree."); *Perez-*

*Alevante v. Gonzales*, 197 Fed.Appx. 191, 195 (3d Cir. 2006) ("[T]he fact that Perez–Alevante

did not comply with his statutory responsibility to provide a current address did not necessarily

mean that the immigration court was entirely relieved of its obligation to provide him with notice

that met the requirements of the Due Process Clause."); *People v. Pena*, 79 N.E.3d 728, 733

(Ill.App. 2017) (same).

Nonetheless, notwithstanding the Government's failure to mail the BOA and FMTC citations to defendant in Texas, "[s]tatutes imposing certain technical requirements for notice may not be strictly enforced if the party seeking enforcement had actual notice and cannot show prejudice as a result of the opposing party's failure to comply with the technical requirements." *People ex rel. Douglas v. One 1984 Toyota Supra Vehicle, Registration No. JT2MA67L5E0117591, Title No. P4343504*, 560 N.E.2d 390, 392 (Ill.App. 1990). In fact, specifically with respect to the notice requirements of 735 ILCS 5/2–1402(b), courts have made clear that because "the essence of the service requirements is to provide due process, the failure to effect personal service on a judgment debtor may be excused where it is clear the debtor received actual notice of the citation." *Signature Fin. LLC v. Shtayner*, No. 18 C 4676, 2020 WL 2041347, at *2 (N.D.Ill. Apr. 28, 2020) (internal quotation and citation omitted).

Here, there can be no dispute that defendant received actual notice of the citations, whether it be from his wife in Oak Brook, or the subsequent mailing of the various citation responses. Indeed, as clearly evidenced by the docket, defendant has fully participated in these supplementary citation proceedings, and has had every opportunity to appear and raise his objections with the Court, at least some of which the Court has accepted. Under these circumstances, defendant has suffered no prejudice, and the Government's failure to mail two of the three citations to defendant at the Texas prison where he was residing at the time does not render them void. *See Motorola Sols., Inc. v. Hytera Commc'ns Corp. Ltd.*, No. 1:17-CV-01973, 2021 WL 3077305, at *2 (N.D.Ill. Mar. 25, 2021); *Signature Fin.*, 2020 WL 2041347, at *3.[8]

---

[8] Defendant also asserts that he did not receive notice of "his right to a citation hearing." However, Illinois courts have made it "clear that Illinois law does not require an evidentiary hearing in all supplementary turnover proceedings." *Kelley*, 40 F.4th at 787. This is particularly so where, as here, a defendant has "failed to present any evidence creating an issue of fact that necessitated one." *Id.*

### 4. Defendant's remaining arguments regarding improper notice lack merit.

Defendant raises a number of other objections that flow from his assertion that the Government failed to provide him with notice of the citations. The Court addresses each argument briefly in turn, ultimately concluding that they are without merit.

#### a. Defendant lacks standing to assert his wife's interest in the BOA account.

With respect to the citation to BOA, defendant briefly argues that his wife, Allison Anders, has been deprived of her right to assert her interest in the BOA checking account at issue, which is held in joint tenancy with defendant. (Dckt. #375 at 6, 37). However, as the Government correctly argues, defendant's standing to assert his wife's interest in these proceedings is questionable at best. *See United States v. France*, 782 F.3d 820, 826 (7th Cir.), *cert. granted, judgment vacated on other grounds*, 577 U.S. 1026 (2015) (noting "concern[]" about a defendant's wife's standing to assert an exemption on behalf of another, there, her daughter). Moreover, nothing has prevented Ms. Anders – who received a copy and notice of the BOA citation at her residence in Oak Brook – from participating in these citation proceedings and asserting her interest in the account. *See Kollintzas*, 501 F.3d at 800. She has declined to do so and the time to do so has now passed.

#### b. Defendant is not entitled to the $4,000 exemption of personal property under Illinois law.

Defendant also briefly mentions his purported right to assert the so-called "wild-card" exemption under Illinois law for up to $4,000 in personal property. *See* 735 ILCS 5/12-1001(b). However, defendant's attempt to assert this state law exemption in these proceedings to recover restitution under the MVRA is misplaced.

Indeed, the MVRA "broadly permits the United States to enforce a restitution order against 'all property or rights to property of the person fined,' notwithstanding any other federal law," and "limits the exemptions that apply to the collection of restitution debt to certain tax levy exemptions enumerated in the Internal Revenue Code."[9]  *United States v. Jackson*, No. 22-MC-5013 BHS, 2022 WL 16949590, at *1 (W.D.Wash. Nov. 15, 2022), *quoting* 18 U.S.C. §3613(a). Those enumerated exemptions do not include a wild-card exemption, leaving defendant's purported exemption for $4,000 under Illinois law inapplicable here.  *See France*, 782 F.3d at 826 ("[W]e are convinced that state law exemptions are inapplicable to the government's enforcement efforts" for restitution under the MVRA); *United States v. Drapeau*, 388 F.Supp.3d 1289, 1294 (W.D.Wash. 2019) ("Section 3613(a)(2) of the MVRA expressly states that state law exemptions to garnishment that would otherwise be applicable under the FDCPA, 28 U.S.C. §3014, do not apply to a federal action seeking the collection of a criminal restitution debt under the MVRA.").

### c.    BOA's response to the citation was sufficient.

Defendant also asserts that the fact that the verification portion of BOA's initial citation response was undated (*see* Dckt. #301 at 4) renders it non-compliant with the requirements of 28 U.S.C. §1746 and therefore unable to support the Government's motion for turnover.   However, the fact that BOA's initial response – which was signed under penalty of perjury by a BOA officer who attested that the information therein was true and correct – lacks a date upon which it was signed does not render it invalid under 28 U.S.C. §1746 given that the "approximate date"

---

[9] Those narrow exemptions are: (1) wearing apparel and school books; (2) fuel, provisions, furniture, and personal effects; (3) books and tools of a trade, business, or profession; (4) unemployment benefits; (5) undelivered mail; (6) certain annuity and pension payments; (7) workmen's compensation; (8) judgments for support of minor children; (10) certain service-connected disability payments; and (12) assistance under the Job Training Partnership Act.  26 U.S.C. §§6334(a)(1)–(8), (10), (12).  Notably, defendant has not attempted to assert any of these exemptions.

that the officer executed the document is "demonstrable." *See, e.g., E.E.O.C. v. World's Finest Chocolate, Inc.*, 701 F.Supp. 637, 639 (N.D.Ill. 1988); *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 475-76 (6th Cir. 2002) (same, citing *World's Finest Chocolate, Inc.*); *Trevino v. Lockheed Martin Corp.*, No. 108CV00189JECRGV, 2008 WL 1133529, at *3-4 (N.D.Ga. Oct. 31, 2008) (citing cases). In this case, BOA's response was executed at some point between when BOA received the citation to discover assets (November 10, 2015) and the date the response was filed (November 30, 2015), and this is sufficient information for the Court to find substantial compliance with the requirements of 28 U.S.C. §1746. *See, e.g., Chicago Reg'l Council of Carpenters Pension Fund v. Longshore/Daly, Inc.*, No. 08 C 359, 2014 WL 716223, at *3 n.1 (N.D.Ill. Feb. 25, 2014) (citing *World's Finest Chocolate* and finding undated declarations sufficient under 28 U.S.C. §1746 where "the date of signatures [could] be approximated based on the content and filing dates of the declarations").[10]

Having resolved each of defendant's notice-related arguments, the Court turns to defendant's remaining arguments.

### B. Good cause supports the extension of the citations and the Court has jurisdiction over these citation proceedings.

Citing Illinois Supreme Court Rule 277, defendant argues that the citations – issued and answered initially back in 2015 – have long expired under the automatic 6-month termination provision of that Rule, thereby divesting this Court of jurisdiction and terminating the Government's right to collect on the citation. The Court disagrees.

Illinois Supreme Court Rule 277 provides that a supplemental citation proceeding initiated under 735 ILCS 5/2–1402:

---

[10] In light of the sufficiency of BOA's initial response to the citation, the Court need not address defendant's argument that BOA's amended response to the citation, (Dckt. #353 at 4), is insufficient because it was neither signed nor dated.

14

> continues until terminated by motion of the judgment creditor, order of the court, or satisfaction of the judgment, but terminates automatically 6 months from the date of (1) the respondent's first personal appearance pursuant to the citation or (2) the respondent's first personal appearance pursuant to subsequent process issued to enforce the citation, whichever is sooner. *The court may, however, grant extensions beyond the 6 months, as justice may require.*

Ill.Sup.Ct.R. 277(f) (emphasis added). While defendant correctly cites this Rule, his steadfast reliance on the 6-month termination provision is misplaced under the plain language of the Rule itself and well-established authority.

First, as the Seventh Circuit has explained, "Illinois courts do not interpret Rule 277(f) so rigidly; a court may extend a supplementary proceeding beyond six months, so long as extensions do not constitute harassment of a party." *U.S. ex rel. McCandliss v. Sekendur*, 631 Fed.Appx. 447, 449 (7th Cir. 2015); *see also Laborers' Pension Fund v. Pavement Maint., Inc.*, 542 F.3d 189, 194 (7th Cir. 2008) ("Both state and federal courts construe Rule 277 liberally."). Here, although the Government was far from diligent in pursuing the citations first issued back in 2015, defendant has not even attempted to argue that he has been harassed or otherwise prejudiced due to the lengthy pendency of the citations. *See Pavement*, 542 F.3d at 194 ("There is no evidence that MAT Leasing has suffered any prejudice, harassment, or injustice as a result of the delays."); *Levine v. Pascal*, 236 N.E.2d 425, 431 (Ill.App. 1968) ("[U]nswerving obedience is not demanded where no material harm is done to any litigant.") (internal quotation and citation omitted). !!!

Furthermore, after it received all three of the amended citation responses in 2021, the Government filed their motions for turnover in late 2021, and defendant was provided an unfettered opportunity – along with months-long extensions – to respond. On this record, notwithstanding the fact that the Government did not explicitly seek extensions of the citations before they expired, this Court has the authority to grant extensions given that they are in the

15

interest of justice. *See Pavement*, 542 F.3d at 195 (holding that "despite the six-month limit, '[t]he court may . . . grant extensions beyond the 6 months, as justice may require [and] [n]othing in the rule requires a party to seek or request an extension from the court in order to avoid termination. Rather, the rule allows *the court* to 'grant extensions . . . as justice may require.'"), *quoting* Ill.Sup.Ct.R. 277(f) (emphasis added); *W. Bend Mut. Ins. Co. v. Belmont State Corp.*, No. 09 C 345, 2010 WL 3700834, at *3 (N.D.Ill. Sept. 9, 2010) (same, citing *Pavement*); *Kalmin v. Varan*, 2021 IL App (1st) 200755-U, at ¶¶27, 28, 2021 WL 4060445, at *4 (Ill.App. 2021) (same, citing *Pavement*).[11]

Second, and more importantly, as the Seventh Circuit has further made clear, "Rule 277 concerns only the mechanics of collection and does not affect the jurisdiction of the federal courts." *McCandliss*, 631 Fed.Appx. at 449. It follows that where, as here, the Government appropriately initiated these collection proceedings within the criminal case ordering restitution, there can be "no concern" about the Court's jurisdiction. *Kollintzas*, 501 F.3d at 801; *see also United States v. Henricks*, 886 F.3d 618, 624 (7th Cir. 2018); *McCandliss*, 631 Fed.Appx. at 449 ("The district court had subject-matter jurisdiction to order garnishment . . . not because of Rule 277 . . . but because the court had ancillary jurisdiction to enforce its underlying judgment, as well as original jurisdiction over the government's effort to collect a debt on its own behalf.").

Accordingly, Rule 277's 6-month termination provision does not divest this court of jurisdiction or otherwise terminate the Government's right to proceed in these citation proceedings.

---

[11] The decision in *Shipley v. Hoke*, 22 N.E.3d 469 (Ill.App. 2014), upon which defendant relies, is not to the contrary. As the *Shipley* court noted, "Rule 277(f) gives the trial court great discretion to adjust the length of supplementary proceedings to fit the particular needs of the case," *Shipley*, 22 N.E.3d at 488, and "[t]he six-month period is merely the default period." *L.A. Sites, Inc. v. Lockport 199, LLC*, 2023 IL App (3d) 220140-U, at ¶21, 2023 WL 2017408, at *3 (Ill.App. 2023) (citing *Shipley*).

      **C.**      **The Government is not required to show that the funds are traceable to Defendant's crimes and the previously ordered payment plan does not prevent the Government's ability to enforce its restitution judgment.**

Alternatively, defendant argues that even if he was properly served with the citations, and that they did not expire, the Government has failed to meet its burden to show that the funds it is seeking to apply towards the restitution judgment are traceable to the crimes of which he was convicted or are otherwise appropriate substitute funds as required for forfeiture. *See* 18 U.S.C. §981(a)(1)(C) & 28 U.S.C. §2461(c). Defendant also asserts that because the judgment order provided for a payment plan, (*see* Dckt. #313 at 2) – which he has complied with – the Government is barred from otherwise collecting on the restitution judgment. Respectfully, defendant's arguments are misplaced where, as here, the Government is seeking to enforce its *restitution* judgment for the benefit of the victims of his offenses. (*See* Dckt. #313, at 8-12).

Again, the MVRA "broadly permits the United States to enforce a restitution order against all property or rights to property of the person fined," *Jackson*, 2022 WL 16949590, at *1, and permits the Government to enforce that order under the FDCPA, 28 U.S.C. §3001. *See Kollintzas*, 501 F.3d at 801. As the Government correctly notes, the "FDCPA does not contain a tracing requirement." *United States v. Latorre*, No. 3:12-CR-439-D 01, 2014 WL 3530830, at *1 (N.D.Tex. July 16, 2014); *see also United States v. Feichtinger*, 172 F.3d 54, 1998 WL 894664, at *1 (7th Cir. 1998). "Consequently, whether the property subject to the writ of garnishment was used in criminal activity or purchased with the proceeds of criminal activity 'has absolutely no bearing on the government's authority to levy' under the FDCPA." *Latorre*, 2014 WL 3530830, at *1, *quoting Feichtinger*, 1998 WL 894664, at *1. Thus, contrary to defendant's

assertion, the Government is not required to show that the funds at issue here are traceable to his offenses.[12]

With respect to the payment plan, defendant's compliance therewith does not preclude the Government from recovering the funds at issue.  As the Government explains, this argument has been squarely rejected by the Seventh Circuit in *United States v. Wykoff*, 839 F.3d 581, 582 (7th Cir. 2016).  There, citing a "special instruction" similar to that entered here, the defendant argued that his restitution payments must be limited to 10 percent of his monthly income.  In rejecting this argument, the Court made clear that such an instruction does not *limit* defendant's restitution payments to 10 percent of his monthly income, but rather indicates that "10 percent is the *minimum* amount he must pay to complete restitution."  *Id*. (emphasis in original).  Because the "federal criminal code requires that restitution be paid immediately unless the district court provides otherwise," the Court rejected the defendant's claim as groundless.  *Id*. (citing 18 U.S.C. §3572(d)(1)); *see also United States v. Lemberger*, 673 Fed.Appx. 579, 580 (7th Cir. 2017) ("[R]egardless of an inmate's participation in the [restitution payment] program, the government remains free to use 'all other available and reasonable means" in collecting restitution.'"), *quoting* 18 U.S.C. §3664(m)(1)(A)(ii); *United States v. James*, 312 F.Supp.2d 802, 806 (E.D.Va. 2004) ("[T]he existence of this [payment] schedule does not mean that the government is precluded from pursuing other avenues of ensuring that defendant's restitution obligation is satisfied.").

---

[12] Defendant's position on this point is understandable in light of the "Preliminary Order of Forfeiture Order" attached to the judgment entered against him, which directly tracks the restitution judgment. (Dckt. #313 at 13-17).

The Court reaches the same conclusion here.  Defendant's compliance with the payment plan does not preclude the Government from collecting the funds at issue here to satisfy the restitution judgment.

### D. The distributions of the defendant's accounts at F&G Life and FMTC are subject to tax withholdings, if any.

Finally, defendant argues that, at least with respect to the annuity account at F&G Life and the IRA account at FMTC, taxes should be withheld from distribution to the Government to account for any tax liabilities resulting from the withdrawals.  (Dckt. #376 at 14-15 & #381 at 15).  The Court agrees.

To begin, contrary to the Government's apparent belief, defendant is not arguing that these accounts are exempt.  (*See* Dckt. #388 at 8.)  Nor is he arguing that he would prefer *not* to withdraw on those accounts now – as opposed to later – to avoid any tax penalties, and nor could he for that matter.  *See United States v. Sayyed*, 862 F.3d 615, 619 (7th Cir. 2017) ("The law is not based upon the rights Sayyed would *prefer* to exercise; rather, it is based upon the rights Sayyed *possesses*.") (emphasis in original); *United States v. Frank*, 8 F.4th 320, 332 (4th Cir. 2021).

Instead, defendant argues simply that the amount of the distribution to the Government is subject to any tax penalties or implications he may face as a result of the withdrawals.  While defendant does not cite relevant authority for this position, ample support exists.  Indeed, as the Seventh Circuit has explained, when enforcing its liens on non-exempt property, the Government "steps into the defendant's shoes, 'acquir[ing] whatever rights the [defendant] himself possesses.'"  *Sayyed*, 862 F.3d at 619, *quoting United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 725 (1985).  It follows that any early withdrawal penalty or tax implications "would qualify as a limit on [defendant's] right" to access his funds, and "thus as a parallel limit on the

government's right of access." *Frank* 8 F.4th at 333; *Sayyed*, 862 F.3d at 619 (explaining that the government's right to enforce its criminal restitution order is "subject to the tax penalties faced by Sayyed for early distribution of his retirement funds."); *see also United States v. Shkreli*, 47 F.4th 65, 76 (2d Cir. 2022) ("The district court should determine whether the Government's garnishment would trigger the ten-percent early withdrawal tax, and, if so, the amount subject to garnishment by the Government.").

Accordingly, because the Court is not privy to the applicable plans for defendant's annuity or IRA accounts, by March 16, 2023, F&G Life and FMTC are directed to provide the Court and the parties with a signed statement reflecting the calculation, to their best estimate, of the amount they anticipate will be withheld from any disbursement of defendant's funds to cover defendant's federal or state tax liabilities, if any.[13]  *See United States v. Frank*, No. 117CR114LMBMSN, 2022 WL 528852, at *4 (E.D.Va. Feb. 22, 2022), *aff'd*, 2023 WL 1794153 (4th Cir. Feb. 7, 2023) (directing the third party garnishees to calculate the appropriate tax withholdings).  The remainder of the funds will be turned over to the Government.

## CONCLUSION

For the foregoing reasons, the Government's motion for turnover as to Bank of America, (Dckt. #353), is granted.  The Government shall submit a proposed turnover order for the BOA funds to the Court's proposed order inbox by March 2, 2023.  The motions for turnover as to Fidelity & Guaranty Life Insurance Company, (Dckt. #355), and Fidelity Management Trust Company, (Dckt. #370), are granted in part as modified by the Court above.  As discussed above, by March 16, 2023, F&G Life and FMTC shall provide the parties with a signed statement reflecting the calculation, to their best estimate, of the amount they anticipate will be withheld

---

[13] Notably, FMTC has already contemplated making this calculation, including a request in its amended citation response that it be informed if "taxes are to be withheld from any payments."  (Dckt. #370 at 5).

from any disbursement of defendant's funds to cover defendant's federal or state tax liabilities, if any. Upon receipt of those statements, the Government shall promptly electronically file the statements on the docket for the Court's review. Any objection to the tax statements shall be filed within seven days of the Government's filing of the F&G Life and FMTC statements. The Government shall promptly provide F&G Life and FMTC with a copy of this Order. The Government shall submit a proposed turnover order for the F&G Life and FMTC funds to the Court's proposed order inbox by March 30, 2023.

**Date: February 22, 2023**

**Jeffrey I. Cummings**
**United States Magistrate Judge**